IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY A. THOMAS, | ) | |
| | ) | No. 14 C 7900 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shirley Thomas ("Plaintiff"), appearing *pro se*, appeals the decision of the Commissioner of the Social Security Administration ("SSA") denying her Social Security disability benefits under Title II ("DIB") and Title XVI ("SSI") of the Social Security Act ("the Act"). Plaintiff has filed an opening brief [19] and the Commissioner has filed a response [23]. After reviewing the record, the court affirms the Commissioner's decision.

## BACKGROUND

**I.     Procedural History**

On October 28, 2009, Plaintiff filed an application for SSI and on November 25, 2009, she also completed an application for DIB for a disability that began on January 19, 1990.[1] She was 54 years old at the time of her concurrent application.[2] Plaintiff alleges a history of pulmonary fibrosis and restrictive lung disease.[3] She has not worked since her alleged onset date.[4] Plaintiff's claims were denied initially on December 11, 2009 and upon reconsideration on

---

[1] (R580-81, 881-83)
[2] (R59)
[3] (R632)
[4] (Id.)

February 14, 2010.[5] She filed a timely hearing request on April 13, 2010.[6] A hearing was scheduled on October 21, 2011 before an Administrative Law Judge ("ALJ") who issued a denial on December 12, 2011.[7] On January 6, 2012, Plaintiff filed a request for review by the Appeals Council ("AC") that was granted on May 14, 2012.[8] The AC determined that remand was proper because the audible hearing record from the October 21, 2011 hearing was incomplete and a decision grounded on substantial evidence could not be made.[9] The case was remanded to the ALJ and another hearing was conducted on December 19, 2012.[10] Plaintiff appeared with her attorney and testified before the ALJ. (Id). On January 18, 2013, the ALJ issued an order denying Plaintiff's application for DIB and SSI benefits.[11]

## II. Medical Evidence

Records indicate that Plaintiff first complained of headaches and difficulty breathing in January 1990.[12] Plaintiff had several visits to area hospitals in 1990, which showed that her lung functioning was within normal limits.[13] In a letter dated March 23, 1990, staff physician Dr. Glenn Beard opined that Plaintiff's chest and lungs revealed "no abnormal sounds," that pulmonary tests yielded normal results, and her chest x-rays were normal.[14] Additionally, in another letter dated December 10, 1992, Dr. Beard noted that his physical examination of Plaintiff yielded normal results and that her lungs were clear, and there was a "paucity of physical findings and chest x-rays.[15]

---

[5] (R458, 491-94, 487-90, 886-88)
[6] (R891-92)
[7] (R475-83)
[8] (R484-86)
[9] (R485)
[10] (R904-27)
[11] (R458-70)
[12] (R223, 697)
[13] (R368-69); (R218, 370))
[14] (R216-17)
[15] (R184-85)

2

Plaintiff's treatment records from 1991 show that several doctors and hospitals found that her lungs were clear and had normal functioning, and diagnostic tests showed no active pulmonary pathology. Plaintiff visited Dr. Michael Goldman on May 27, 1993 because of a "burning sensation" in her throat.[16] In a letter dated the same day, Dr. Goldman opined that a physical examination of Plaintiff yielded normal results.[17] Treatment notes from University of Illinois Hospital ("UIC") in 1993 indicate that numerous attending physicians examined Plaintiff but they generally found that Plaintiff had normal lung functions.[18]

Subsequent to her visits to UIC, there were no records on file indicating whether Plaintiff sought treatment and where she received medical help until June 1, 2000, when she was admitted to the emergency room at Oak Forest Hospital for a fever and a productive cough.[19] An x-ray was taken that resulted in a "normal chest" finding and "clear lungs."[20] The next relevant treatment note for purposes of this opinion shows that Plaintiff was admitted to the emergency room on June 21, 2002 for chest pain and tightness and was discharged home on the same day with instructions to take medication.[21]

On April 10, 2002, an internal medicine evaluation was completed by Dr. Stephen Epner.[22] Dr. Epner noted that Plaintiff has had a history of bronchitis and shortness of breath since 1990. A physical examination yielded normal results and clear lungs.[23]

---

[16] (R854)
[17] (Id.)
[18] (R340-43, 346)
[19] (R306-07)
[20] (R316)
[21] (R279-83, 286)
[22] (R334-36)
[23] (R335)

On January 16, 2009, Plaintiff visited Cook County Hospital ("CCH") for heart testing due to an enlarged heart.[24] The findings were that her heart and aorta were normal and her lungs clear.[25] Plaintiff received another chest exam on March 18, 2010 that yielded normal chest findings and a non-productive respiratory cough.[26] The findings were generally the same for Plaintiff's subsequent five visits to CCH from April through September 2010.[27] After a pulmonary function study performed on April 23, 2010, Plaintiff was diagnosed with asthma and prescribed albuterol to control her breathing.[28]

On June 30, 2010, Plaintiff attended a consultative examination for the Bureau of Disability Determination Services ("DDS") at the Arthritis and Internal Medicine Specialists Limited.[29] A physical examination showed that Plaintiff was not short of breath and had clear lungs with no wheezes.[30] A pulmonary test was performed which also yielded normal results.[31] Plaintiff visited CCH on August 14, 2012 for an upper respiratory infection.[32] She was discharged and instructed to take medication to relieve her symptoms.[33] Plaintiff's final visit to CCH on record was on November 13, 2012 for a cold, at which time her exam showed "clear lungs."[34]

## III. Plaintiff's Testimony

---

[24] (R784-87)
[25] (Id.)
[26] (R782, 802)
[27] (R770-73, 788-89, 803-06)
[28] (R779)
[29] (R746-49)
[30] (R747-48)
[31] (Id.)
[32] (R859, 865, 876)
[33] (*See supra* note 51)
[34] (R873-75)

Plaintiff appeared and testified at the re-hearing on December 19, 2012.[35] Plaintiff graduated high school and attended college for a year.[36] She testified that her most extensive employment was that of a tax clerk.[37] With regard to her disability, Plaintiff testified that she suffers from constant infection in her lungs and airways.[38] She takes antibiotic medication to relieve the symptoms for a short period of time.[39] When the inflammation spreads from her lungs to her throat, Plaintiff testified that she becomes short of breath for up to a day.[40]

Plaintiff further testified that she is able to bathe, groom, and dress independently.[41] She can also cook, clean, do laundry, and grocery shop.[42] Plaintiff testified that her daily activities include reading the Bible, meditation, and watching television.[43] Though her brother and sister will drive her to the grocery store and the doctor's office, Plaintiff testified that she can take public transportation independently to go to the store.[44] She stated that she arrived at the hearing location after taking public transportation on her own.[45]

Plaintiff's attorney had the opportunity to further question Plaintiff. She testified that though she testified to cleaning her room, she only makes the bed.[46] She will often lie down during the day to rest but her breathing is labored when she does.[47] Her breathing problem makes

---

[35] (R904-27)
[36] (R909)
[37] (R910)
[38] (Id.)
[39] (R910-11)
[40] (Id.)
[41] (R912)
[42] (Id.)
[43] (R913)
[44] (Id.)
[45] (R915)
[46] (R916)
[47] (Id.)

5

it difficult for her to sleep.[48] Plaintiff further testified that her inflammation is worse and it is becoming harder to control.[49]

## V. ALJ Decision

Early in his decision, the ALJ noted that Plaintiff previously filed applications for DIB and SSI. According to the record, Plaintiff filed a concurrent application on July 13, 1993 that was denied by an ALJ on April 28, 1995.[50] She filed another concurrent application on April 23, 2002 that also yielded an unfavorable decision by ALJ Percival Harmon on November 15, 2004.[51] Plaintiff filed concurrent applications on November 18, 2002 and June 6, 2005.[52] Both were denied on April 24, 2009 and April 29, 2009.[53] The ALJ noted that the current applications are based on the same facts and issues that were involved in the previous applications.[54] Regarding Plaintiff's DIB claim, the ALJ noted that Plaintiff has not presented any new and material evidence since November 15, 2004, the date of the previous ALJ denial.[55] Moreover, because Plaintiff's date last insured ("DLI") is December 31, 1995, the ALJ dismissed Plaintiff's DIB claim under the doctrine of *res judicata*.[56] The ALJ further noted that Plaintiff also did not present new and material evidence for her SSI claim since April, 24, 2009, the date of the previous ALJ denial.[57] Because the claim up until April 24, 2009 is also barred by *res judicata*, the ALJ considered the question of disability only with regard to Plaintiff's SSI claim beginning on April 25, 2009.[58]

---

[48] (Id.)
[49] (R917)
[50] (R475)
[51] (R16-22)
[52] (R394-96, 475)
[53] (R475)
[54] (R459)
[55] (Id.)
[56] (Id.)
[57] (Id.)
[58] (Id.)

6

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity ("SGA") since her alleged onset date on January 19, 1990.[59] At step two, the ALJ found that Plaintiff was severely impaired by pulmonary fibrosis, restrictive lung disease, pulmonary interstitial disease, and hypertension.[60] Though the ALJ acknowledged that Plaintiff's attorney found there may be an emotional impairment involved, the ALJ concluded that the record does not support a finding of a medically determined mental impairment.[61] At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of one of the impairments set forth in the listings.[62]

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work but should avoid exposure to extreme cold and heat, poorly ventilated areas, and pulmonary irritants, including fumes, odors, dusts, and gases.[63] At step four, the ALJ found that Plaintiff did not have any past relevant work.[64] At the final step, the ALJ concluded that based upon Plaintiff's age, education, work experience, and RFC, she would be able to perform jobs that exist in significant numbers within the national economy, such as inspector, hand packager, and kitchen helper.[65]

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review.[66] Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ

---

[59] (R461)
[60] (Id.)
[61] (R462)
[62] 20 C.F.R. 404, Subpart P App'x 1.
[63] (Id)
[64] (R468)
[65] (R468-69)
[66] *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000)

applied the correct legal standards in reaching his decision.[67] Substantial evidence is evidence "a reasonable mind might accept as adequate to support a conclusion."[68] A "mere scintilla" of evidence is not enough.[69] Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion."[70] If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand.[71] An ALJ "must minimally articulate his reasons for crediting or discrediting evidence of disability."[72] The Court conducts a "critical review of the evidence" and will not uphold the ALJ's decision when "it lacks evidentiary support or an adequate discussion of the issues."[73] The Court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations."[74]

## ANALYSIS

Plaintiff, appearing *pro se*, requested judicial review of the ALJ's January 18, 2013 decision to deny her application for DIB and SSI. Unfortunately, Plaintiff's brief is largely unintelligible and she does not proffer any formal arguments as to why the ALJ decision was in error or why the decision should be reversed. The Court will therefore review the case to determine whether the ALJ decision is reasonably supported by substantial evidence.

**I.     Res Judicata**

---

[67] *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009)
[68] *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
[69] *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002)
[70] *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)
[71] *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)
[72] *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000)
[73] *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003) *quoting Clifford,* 227 F.3d at 869
[74] *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)

8

As an initial administrative matter, the ALJ determined that Plaintiff's November 2009 DIB claim is barred by the doctrine of *res judicata*.[75] Pursuant to agency regulations, *res judicata* occurs when "there has been a previous determination or decision with respect to the rights of the same affected party on the same facts and law pertinent to the same issue or issues which have become final by judicial affirmance."[76] *Res judicata* "bars re-litigation of issues from a first claim during a second claim but upon judicial review, the court must determine whether substantial evidence supported the original decision."[77] The court will examine the entire record, but will not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."[78]

Here, the ALJ's bar of Plaintiff's DIB application was appropriate. Pursuant to 20 C.F.R. §§ 404.957(c)(1); 416.1457(c)(1), *res judicata* exists when: (1) there has been a previous determination or decision under the same subpart with respect to the same party; (2) the previous determination or decision was based on the same facts and on the same issue(s); and (3) the previous determination or decision has become final by either administrative or judicial action. Plaintiff filed a concurrent DIB and SSI application on June 19, 2002 with the alleged disability onset date of January 9, 1990.[79] In her applications, Plaintiff became disabled and unable to work due to an obstructive lung disease.[80] Both applications were denied initially and upon reconsideration. Plaintiff requested a hearing before ALJ Harmon and subsequently, ALJ

---

[75] (R459-59)
[76] 42 C.F.R. § 422.1062
[77] *Groves v. Apfel,* 148 F.3d 809, 810 (7th Cir. 1998)
[78] *Abendroth v. Barnhart*, 26 F. App'x 580, 583 (7th Cir. 2002)
[79] (R394-96)
[80] (R30)

9

Harmon denied Plaintiff's application on November 15, 2004.[81] The AC denied review in 2005 and the ALJ's decision became the final decision of the Commissioner.[82]

Plaintiff's most recent applications filed in November 2009 are based upon the same facts and issues as her previous applications. The ALJ's April 24, 2009 decision covers the period starting January 1, 1990 through November 15, 2004.[83] Though Plaintiff's current application alleges a disability onset date of January 19, 1990, her DIB claim remains barred by *res judicata* because the new onset date falls in between the period of ALJ Harmon's decision. Because ALJ Harmon found that Plaintiff was not disabled beginning January 1, 1990, this finding is imputed to the current application onset date of January 19, 1990. Moreover, Plaintiff's DLI was December 31, 1995. Because ALJ Harmon found that Plaintiff was not disabled from January 9, 1990 through November 15, 2004, Plaintiff does not currently qualify for DIB benefits at an administrative level, as her current application is passed her DLI.[84]

With regard to Plaintiff's SSI claim, she filed another claim on June 6, 2005, alleging a disability onset date of January 1, 1990 of the same impairment.[85] The claims were denied initially on April 24, 2009 by an ALJ.[86] The AC denied review, rendering the ALJ's decision the final decision of the Commissioner. Because the ALJ's decision spanned the period between the application date of June 6, 2005 and the decision date of April 24, 2009, *res judicata* bars Plaintiff's SSI claim for the period prior to the ALJ's final decision on April 24, 2009.[87]

---

[81] (R13-22)
[82] (R6-8)
[83] (R13-22)
[84] 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.131; *Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012)(the claimant must establish that he was disabled before the expiration of his insured status to be eligible for disability.)
[85] (R459)
[86] (Id.)
[87] (Id.)

Therefore, what remains for the Court to review is whether the ALJ properly rendered a disability denial for Plaintiff's SSI claim for the period beginning April 25, 2009.[88]

## II. The November 15, 2004 ALJ Decision

Because Plaintiff's brief did not articulate an intelligible claim, the Court does not know if Plaintiff intended to argue that ALJ Harmon erred in rendering his November 15, 2004 decision. However, in the event that Plaintiff did intend to proffer such an argument, the Court cannot grant judicial review because the case is time-barred per agency regulations. Under 42 U.S.C. § 405(g), the court is authorized to review the agency's final decisions but the statute provides that "[a]ny individual, after any final decision of the Commissioner of Social Security…may obtain a review of such decision by a civil action commenced within 60 days after the mailing to her of notice of such decision or within such further time as the Commissioner of Social Security may allow."[89] After ALJ Harmon's denial, the AC denied Plaintiff's further request for review in 2005.[90] Plaintiff had 60 days after receiving the AC denial to file a civil action in district court, which she did not. Therefore, this Court cannot review the ALJ's decision from November 15, 2004. The Court therefore cannot review ALJ Harmon's decision from November 2004.

## III. Substantial Evidence Supported the January 18, 2013 ALJ Decision

Though Plaintiff does not explicitly argue that the ALJ erred when rendering his disability decision, it can be inferred from her brief that she disagrees with the ALJ's final determination. A review of the ALJ's written decision, however, indicates that he reached the merits of the question of whether Plaintiff was disabled after April 25, 2009. The ALJ discussed the medical evidence before him, including the new treatment records after April 2009. The ALJ

---

[88] (Id.)
[89] *Boley v. Colvin*, 761 F.3d 803, 804-05 (7th Cir. 2014)
[90] (R6-8)

gave the following reasons for his finding that Plaintiff's impairments were not disabling to the degree that they would prevent her from engaging in SGA: 1) the medical evidence fails to support Plaintiff's accounts of a debilitating respiratory impairment; 2) numerous factors "militate against a finding for greater restrictions than outlined in the [RFC]"; 3) Plaintiff's medical record does not contain the medical opinion of a treating physician who opined that she would be unable to work because of her condition; 4) Plaintiff has not received the type of medical treatment one would expect for a disabled individual; 5) Plaintiff is able to perform all activities of daily living without assistance and was able to participate in the hearing closely.[91]

With regard to the medical evidence, the ALJ discussed, at length, the various treatments that Plaintiff has received since the updated onset date of April 25, 2009 and found that numerous diagnostic tests performed since 2009 yielded normal results.[92] On June 30, 2010, Plaintiff underwent an internal medical consultative examination with Dr. Liana Palacci.[93] During the examination, Plaintiff alleged shortness of breath, frequent pulmonary infections and more than 20 hospital emergency room visits since 1990.[94] However, after a physical examination, Dr. Palacci found that Plaintiff's lungs were clear, her heart normal, and that she was capable of a full range of motion of all joints.[95] Moreover, Dr. Palacci noted that Plaintiff did not appear short of breath.[96] The ALJ alluded to Plaintiff's subsequent visits to the clinic with complaints of shortness of breath and respiratory infections in 2011 and 2012, but after physical examinations were performed during the visits, the results indicated that Plaintiff's lungs were clear and her respiratory system intact.[97] As such, the ALJ properly supported his

---

[91] (R464-68)
[92] (*See* R. 779, 784-84, 788, 802.)
[93] (R746-79)
[94] (*See supra* note 134)
[95] (R746, 748)
[96] (R747)
[97] (R856-57, 865-66, 869, 871,

finding that the medical evidence did not corroborate Plaintiff's reports of debilitating symptoms.

The ALJ also found that factors supported his RFC determination and undermined Plaintiff's allegations of greater restrictions. The ALJ referred to the findings of state agency medical consultant Dr. David Mack, who contributed the only physical RFC report in Plaintiff's record. After his examination, Dr. Mack found that Plaintiff had the capacity to perform a full range of medium work, but that she should avoid exposure to pulmonary irritants such as fumes, odors, dusts and gases.[98] Dr. Mack opined that Plaintiff's chest x-rays yielded normal results and her lungs were clear on exam with "good air entry."[99] During his examination, Dr. Mack acknowledged that Plaintiff has a medically determinable impairment ("MDI") but that she is able to perform all activities of daily living without any assistance.[100] Dr. Mack also opined that Plaintiff's allegations are not supported by the medical record and though she was diagnosed with pulmonary fibrosis, Dr. Mack noted that "a 04/09 report states no evidence of pulmonary fibrosis."[101] Therefore, Plaintiff's second argument is also rejected.

The ALJ also noted the lack of medical opinions from treating or examining physicians in Plaintiff's record. Despite allegations of a restrictive lung disease that began in 1990, there is no indication that Plaintiff sought help from a specialist in pulmonary disorders. Though Plaintiff has frequently received medical assistance for her respiratory problems and infections since 2009, treatment records show that the visits were generally comprised of physical examinations that resulted in normal test results and she was often discharged home with medication. During her visits to the hospital, Plaintiff did not consistently consult with a specific doctor but rather

---

[98] (R752-59)
[99] (R759)
[100] (Id.)
[101] (Id.)

was treated by the attending physician present. Nonetheless, the medical opinions on record are uniform and her condition is generally deemed to be "normal." The ALJ concluded that "given the claimant's allegations of disabling symptoms, one might expect to see…restrictions placed on the claimant by the treating doctor" but "no restrictions [were] recommended by any treating doctor."[102]

The ALJ further opined that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual."[103] While a claimant bears the burden of proving disability, the ALJ has a duty to develop a full and fair record.[104] This duty is enhanced when a claimant appears without counsel; then the ALJ "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."[105] Although *pro se* litigants must furnish some medical evidence to support their claim, the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information.[106] The Court will generally uphold the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation.[107] Accordingly, "a significant omission is usually required before this court will find that the [Commissioner] failed to assist *pro se* claimants in developing the record fully and fairly."[108] And an omission is significant only if it is prejudicial.[109]

---

[102] (R467)
[103] (Id.)
[104] *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000); *Thompson v. Sullivan,* 933 F.2d 581, 585 (7th Cir. 1991).
[105] *Thompson,* 933 F.2d at 585–86 *quoting Smith v. Sec. of Health, Educ. & Welfare,* 587 F.2d 857, 860 (7th Cir. 1978); *see also Nelson v. Apfel,* 131 F.3d 1228, 1235 (7th Cir. 1997).
[106] *Johnson v. Barnhart,* 449 F.3d 804, 808 (7th Cir. 2006); 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)
[107] *Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir. 1994); *Binion v. Shalala,* 13 F.3d 243, 246 (7th Cir. 1994)
[108] *Luna,* 22 F.3d at 692
[109] *Nelson,* 131 F.3d at 1235

A review of the hearing transcript shows that the ALJ did not question Plaintiff regarding the lack of a treating physician. The lack of such questioning notwithstanding, he gave ample reasons to support his final determination. Furthermore, during the hearing, the ALJ provided Plaintiff with the opportunity to add additional evidence and testimony to the record but Plaintiff stated that she had nothing further to add.[110] She also had the opportunity to clarify her testimony before the ALJ through her attorney representative. As such, the Court does not believe that the failure to question the Plaintiff regarding the lack of a treating physician was not prejudicial, and, therefore, not significant.

Finally, the ALJ found that Plaintiff's allegations to the disabling nature of her impairments are inconsistent with the RFC because Plaintiff's testimony regarding her daily activities demonstrated that she could perform a full range of medium work without exposure to pulmonary irritants.[111] Plaintiff testified at the hearing that she is able to bathing, grooming, dressing, cooking, cleaning, and grocery shopping without any assistance.[112] The ALJ also opined that there are no medical opinions in the record that find her unable to work because of her impairment.[113] All of the evidence supports the ALJ's conclusion that although Plaintiff suffers from a severe impairment, she does not suffer from a condition severe enough to qualify her for SSI benefits as a disabled individual.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is hereby affirmed [23] and Plaintiff's request for relief [19] is denied.

---

[110] (R916)
[111] (R468)
[112] (R912-13)
[113] (R468)

**ENTER: 4/4/2016**

_____
**U.S. Magistrate Judge, Susan E. Cox**